T.C. Memo. 2015-85

UNITED STATES TAX COURT

JEAN COWAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15645-13.                                Filed May 4, 2015.

Until 2004 P was the guardian of M.W.  A State court placed M.W. in P's home from 1991 to 2004.  In 2004, when M.W. turned 18, P's guardianship over M.W. was terminated under State law.  However, P continued to maintain and provide for M.W.  In 2006, M.W. had a child, H.A.W.  On her timely filed 2011 tax return, P claimed dependency exemption deductions for M.W. (as a "qualifying relative") and H.A.W. (as a "qualifying child"), as well as an earned income tax credit, a child tax credit, and head of household filing status.  The IRS disallowed these deductions and credits and the claimed filing status.  The IRS later conceded P's entitlement to the dependency exemption deduction as to M.W. but not the other adjustments.

Held:  P is not entitled to a dependency exemption deduction for M.W.'s child, H.A.W., as a "qualifying child".

Held, further, P is not entitled to the earned income tax credit or the child tax credit for H.A.W.

Held, further, P is not entitled to file as head of household.

**[\*2]**   Megan L. Sullivan, for petitioner.

Evan K. Like and Robert D. Kaiser, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  The Internal Revenue Service ("IRS") determined a deficiency of $4,390 in the 2011 Federal income tax of petitioner, Jean Cowan. Ms. Cowan petitioned this Court, pursuant to section 6213(a),[1] to redetermine the deficiency.  After the Commissioner's concession of a dependency exemption deduction for Ms. Cowan's former ward, Marquis Woods, as her "qualifying relative", the issues remaining for decision are whether Ms. Cowan is entitled to: (i) a dependency exemption deduction for H.A.W.[2] as a "qualifying child"; (ii) a child tax credit ("CTC") for H.A.W.; (iii) an earned income tax credit ("EITC"); and (iv) head of household filing status.  We conclude that Ms. Cowan is not entitled to the deduction, credits, or head of household filing status.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (26 U.S.C.; "Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Pursuant to Rule 27(a)(3) we refer to minor children by their initials.

**[\*3]**                        FINDINGS OF FACT

This case is before the Court fully stipulated pursuant to Rule 122. At the time she filed her petition, Ms. Cowan resided in Ohio.

Ms. Cowan is the former guardian of Marquis Woods. Marquis was born in 1986 to a mother who was addicted to drugs. He was brought to live with Ms. Cowan when he was six weeks old and has lived with her continuously since then. In an April 1991 proceeding styled Guardianship of Marquis Woods, Case Number 405.742, a State court ordered, with the consent of Marquis's biological mother, that Ms. Cowan was "appointed guardian of the person of Marquis Woods". The court then ordered that "this proceeding be suspended until further order of the Court or until the ward reaches the age of majority, at which time the case will be closed."

Marquis reached age 18 in 2004. The parties stipulate that "[t]he guardianship of Marquis Woods ended when Marquis turned 18 by operation of law".[3] On September 28 of that year, the State court entered in Case Number

---

[3]Ohio law provides: "When a guardian has been appointed for a minor before the minor is over fourteen years of age, the guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless the ward selects another suitable guardian." Ohio Rev. Code Ann. sec. 2111.46 (LexisNexis 2011).

[*4] 405.742 an order (entitled "Entry Terminating") stating that it "[d]etermined that the above-captioned matter should be closed.  MINOR TURNED 18."

Despite the termination of the guardianship, Marquis continued to live with Ms. Cowan and to be supported by her.  Ms. Cowan regards Marquis as her son, and Marquis regards Ms. Cowan as his mother.  Ms. Cowan regards her relationship with Marquis as having the same maternal bond that exists in her relationship with her biological daughter.  However, Ms. Cowan never adopted Marquis.  As to the possibility of adoption, the parties stipulate as follows:

> 22.	Petitioner would have adopted Marquis Woods when he was a minor if she had known the legal distinction between guardianship and adoption and been financially able to hire an attorney to pursue the adoption.

> 23.	Petitioner did not know that, with his consent, it would have been possible to adopt Marquis Woods after he turned 18.  She did not know about adult adoption[4] until recently.

> 24.	Petitioner would have tried to adopt Marquis Woods when he was an adult if she had been financially able to do so and if he consented to the adoption.

---

[4]Ohio Rev. Code Ann. sec. 3107.02(B) (LexisNexis Supp. 2015) provides: "An adult may be adopted under any of the following conditions: * * * (3) If the adult had established a child-foster caregiver, kinship caregiver, or child-stepparent relationship with the petitioners as a minor, and the adult consents to the adoption".

**[\*5]**   In 2006 Marquis fathered a daughter, H.A.W.  In 2011, when Marquis

turned 25 and H.A.W. turned 5, they both lived in Ms. Cowan's household.

Marquis lived in the household for all 12 months of the year, and H.A.W. lived in

the household for 11 months.  Ms. Cowan provided most of the support for the

household in 2011.

Ms. Cowan timely filed her 2011 Form 1040A, U.S. Individual Income Tax

Return, with the IRS.  On that return Ms. Cowan reported adjusted gross income

of $13,920.  She claimed dependency exemption deductions for both Marquis and

H.A.W., claimed the EITC and a CTC[5] on the basis of H.A.W.'s supposed status

as her grandchild and thus her "qualifying child", and claimed head of household

filing status on the basis of her supposedly having a "qualifying child".  On April

8, 2013, the IRS mailed Ms. Cowan a statutory notice of deficiency for tax year

2011 disallowing the dependency exemption deductions, the EITC, the additional

CTC, and head of household filing status.  Since then the Commissioner has

---

[5]Ms. Cowan did not claim any child tax credit on line 33, because the child tax credit provided by section 24(a) may not exceed the taxpayer's regular tax liability, sec. 24(b)(3), and she reported zero regular tax liability.  However, section 24(d) makes a portion of the credit, known as the "additional child tax credit", refundable, and Ms. Cowan claimed this credit on line 39. Eligibility for this child tax credit, whether to reduce one's regular tax or to yield a refund, depends on the presence of a "qualifying child".  See infra part II.

[*6] conceded that Marquis is a "qualifying relative" and that Ms. Cowan is entitled to a dependency exemption deduction for him but has made no other concessions.

## OPINION

### I. Dependency exemption deduction under section 152

An individual is allowed an exemption deduction for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(c). The Commissioner concedes that Ms. Cowan is entitled to this deduction with regard to Marquis but not with regard to his daughter H.A.W.

#### A. Two types of dependents

Section 152(a) defines the term "dependent" to include a "qualifying child" (defined in section 152(c)) or a "qualifying relative" (defined in section 152(d)). Each of the two definitions has multiple requirements, but the "relationship" requirement is the only one in dispute.

##### 1. "Qualifying relative"

An individual can be a "qualifying relative" even if he is not literally a "relative" of the taxpayer but rather simply "has the same principal place of abode as the taxpayer and is a member of the taxpayer's household." Sec. 152(d)(2)(H).

[*7] The parties have stipulated that in 2011 Marquis met that relationship requirement and qualified as Ms. Cowan's "qualifying relative"[6] and thus as her dependent.

## 2. "Qualifying child"

In dispute, however, is whether Marquis's daughter H.A.W. was Ms. Cowan's dependent by virtue of being her "qualifying child".[7] To satisfy the

---

[6]Ms. Cowan does not contend that in 2011 Marquis was her "qualifying child", presumably because, whether or not he passed the "relationship" test discussed below, at age 25 he did not satisfy the age requirement of section 152(c)(3).

[7]Ms. Cowan has not contended that H.A.W. was her "qualifying relative". That status can exist where "for the taxable year of the taxpayer, [the child] has the same principal place of abode as the taxpayer", sec. 152(d)(2)(H) (emphasis added), which is construed to require that the child be "a member of the taxpayer's household during the entire taxable year", 26 C.F.R. sec. 1.152-1(b), Income Tax Regs.; see also Golit v. Commissioner, T.C. Memo. 2013-191, at *9. Since H.A.W. lived with Ms. Cowan for only 11 months of 2011, respondent contends that H.A.W. cannot be Ms. Cowan's qualifying relative. The regulation admits an exception where "temporary absences from the household [are] due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which the dependent is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances." 26 C.F.R. sec. 1.152-1(b); see also Jibril v. Commissioner, T.C. Memo. 2013-267, at *6. Ms. Cowan does not contend that H.A.W.'s month away from her in 2011 was attributable to "temporary absences * * * due to special circumstances", and our record does not show any basis for such a contention. We decline to address sua sponte the question whether a one-month absence is necessarily "temporary" as a matter of law.

**[\*8]** "relationship" requirement for a "qualifying child" under section 152(c)(2), an individual must be--

> (A)  a child[8] of the taxpayer or <u>a descendant of such a child</u>, or
>
> (B)  a brother, sister, stepbrother, or stepsister of the taxpayer or a descendant of any such relative.

Sec. 152(c)(2) (emphasis added).  Ms. Cowan contends that in 2011 Marquis was her "child"."  As used in this section and as relevant here, the term "child"--

> means an individual who is--
>
> > (i)  a son, daughter, stepson, or stepdaughter of the taxpayer, or
> >
> > (ii)  an eligible foster child of the taxpayer.

Sec. 152(f)(1)(A).  For this purpose, an "eligible foster child" is defined as "an individual who is placed with the taxpayer by an authorized placement agency or by judgment, decree, or other order of any court of competent jurisdiction." Sec. 152(f)(1)(C).  Ms. Cowan contends that in 2011 Marquis was her "eligible foster child"--and was thus her "child"--and that his daughter H.A.W. was therefore a descendant of her child and was her "qualifying child".

---

[8]A "child" includes an adopted child (i.e., "a legally adopted individual of the taxpayer, or an individual who is lawfully placed with the taxpayer for legal adoption by the taxpayer").  Sec. 152(f)(1)(B).  Although Ms. Cowan would have been willing to adopt Marquis had circumstances permitted, she did not ever do so.

**[\*9]** B.    <u>Analysis as to H.A.W.</u>

Whether H.A.W. was Ms. Cowan's "qualifying child" in 2011 turns on whether H.A.W.'s father Marquis was Ms. Cowan's "eligible foster child" under section 152(f).  Ms. Cowan contends that Marquis, her former ward, is still her foster child because they continue their relationship and hold each other out as parent and child, that Marquis was therefore her "eligible foster child" under section 152(f)(1)(C), and that we should therefore not sustain the IRS's adjustments.

However, as we have shown, under the statute an "eligible foster child" is "an individual who <u>is placed</u> with the taxpayer by * * * order of any court of competent jurisdiction".  Sec. 152(f)(1)(C) (emphasis added).  Marquis was "placed" with Ms. Cowan from 1991 until he turned 18 in 2004.  In 2004 her guardianship of Marquis ended by operation of law, <u>see</u> Ohio Rev. Code Ann. sec. 2111.46 (LexisNexis 2011), and was explicitly terminated by court order.  Consequently, in 2011 Marquis was no longer Ms. Cowan's "eligible foster child" because she could no longer show that he "is placed" with her by court order.

As we stated in <u>Eshel v. Commissioner</u>, 142 T.C. 197, 205 (2014) (quoting <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1999)):  "When construing a statute, a court's 'analysis begins with the language of the statute'" and, "'where

[*10] the statutory language provides a clear answer, it ends there as well.'" Here, we think there is no ambiguity. The statute defines who is an "eligible foster child", and a taxpayer can determine whether she has an "eligible foster child" by looking to that definition. Again, this definition provides that such a child "<u>is placed</u> with the taxpayer by * * * order". Sec. 152(f)(1)(C) (emphasis added). In this case, since 2004 Marquis has not been "placed with the taxpayer" and he has not been Ms. Cowan's "eligible foster child". The only order still in effect in 2011 was the 2004 order terminating the guardianship.

C. <u>Petitioner's contentions</u>

Notwithstanding the phrase "is placed", Ms. Cowan asserts that "the statute does not specify that the foster child ceases to be a child when they reach the age of majority." It is true that section 152 does not specifically provide that a foster child ceases to be an "eligible foster child" upon reaching the age of majority; rather, it is Ohio State law that so provides and that terminated Marquis's placement with Ms. Cowan. It is the interaction of State law (which defines the relationship) with section 152(f)(1)(A)(ii) (which allows the deduction) that removes Marquis from the ambit of its definition.

Ms. Cowan also asserts that Marquis, having once been placed with her as a foster child, remains her "child" because, she observes, the Code allows other

**[\*11]** relationships created by law to persist despite the cessation of the legal circumstances that created them. For example, an in-law (a relative of one's spouse) may be one's dependent; and even if the spouses divorce or one of them dies, the in-law relationship is deemed to persist. See 26 C.F.R. sec. 1.152-2(d), Income Tax Regs. ("The relationship of affinity once existing will not terminate by divorce or the death of a spouse"). Ms. Cowan evidently infers from this provision a general principle that all relationships once established likewise persist, so that once an individual is a taxpayer's "eligible foster child", he remains her "eligible foster child". This argument fails for the following reasons.

First, the regulation cited above provides for circumstances involving a "relationship of affinity", a phrase we interpret by using its ordinary and common meaning. "Affinity" is a "relationship by marriage" or "[a]ny familial relation resulting from a marriage." Black's Law Dictionary 70 (10th ed. 2014). "A person is a relative by affinity (1) to any blood or adopted relative of his or her spouse, and (2) to any spouse of his or her blood and adopted relatives." Id. at 1480. Ms. Cowan's relationship to Marquis did not result from a marriage; it arose when Ohio placed Marquis with Ms. Cowan as his guardian. There is no basis for arguing that foster care relationships fit within the actual provision of this "affinity" regulation.

**[\*12]** Second, there is no basis for extending, without warrant in the regulation, a principle based in marriage to make it apply to a foster care relationship. Marriage is by default perpetual, lasting (absent divorce) until the death of one of the spouses. Foster care placements, on the other hand, are by definition temporary, lasting no longer than the minority of the child, and possibly much shorter, since a foster child is sometimes placed in a succession of foster homes. Of course, it is possible to create, between two unrelated persons, a parent-child relationship that will last for life--but that is the relationship of adoption, which the statute acknowledges, see sec. 152(f)(1)(B), and which is missing here.

It could not be said in 2011 that Marquis "is placed" with Ms. Cowan; rather, his legal placement with her had ended years earlier. Consequently, in that year he was not her "eligible foster child" and was not her "child" for purposes of section 152(c)(2)(A). As a result, his daughter, H.A.W., was not a "qualifying child" of Ms. Cowan by being a "descendant of * * * [her] child" under that section.

II.     Earned income credit (EITC) and child tax credit (CTC)

To qualify for the EITC, an individual must be an "eligible individual." Sec. 32(a). As pertinent here, an "eligible individual" is an individual who has a "qualifying child", as defined in section 152(c) (determined without regard to

[*13] certain provisions not relevant here).[9]  Sec. 32(c)(1)(A)(i).  Similarly, a taxpayer is entitled to a CTC for "each qualifying child", as defined in section 152(c), who has not reached the age of 17 and for whom the taxpayer is allowed a dependency exemption deduction under section 151.  Sec. 24(a), (c)(1).  Given our determination that, under section 152(c), H.A.W. is not Ms. Cowan's "qualifying child", Ms. Cowan is not entitled to the EITC or the CTC for H.A.W. for tax year 2011.

III.    Head of household filing status

Under section 2(b), a taxpayer qualifies for head of household status if the taxpayer:  (i) is unmarried; (ii) is not a surviving spouse; and (iii) maintains as her home a household that constitutes the principal place of abode of a qualifying child or qualifying relative, as defined in section 152 (without regard to section 152(e)).  Sec. 2(b)(1).  As we have shown, H.A.W. was not Ms. Cowan's "qualifying child", so if Ms. Cowan is to be held eligible for head of household

---

[9]An individual without a qualifying child may nonetheless be an "eligible individual" under section 32(c)(1)(A)(ii) if she meets other requirements; but Ms. Cowan has not argued she qualifies for the EITC using this alternative definition; and even if she did otherwise qualify, section 32(a)(2) completely phases out the EITC for an eligible individual with no qualifying children when the taxpayer has adjusted gross income in excess of $13,660 for tax year 2011.  Since Ms. Cowan reported adjusted gross income of $13,920 on her 2011 return, the EITC would be completely phased out in her case, in the absence of a qualifying child.  See Rev. Proc. 2011-12, sec. 2.04(1), 2011-2 I.R.B. 297, 299.

[*14] status, it would have to be by virtue of Marquis's being a "qualifying relative". However, if the taxpayer's dependent qualifies as such because of section 152(d)(2)(H), the taxpayer is not a head of household. Sec. 2(b)(3)(B). Section 152(d)(2)(H) provides that "[a]n individual * * * who, for the taxable year of the taxpayer, has the same principal abode as the taxpayer and is a member of the taxpayer's household" may be a qualifying relative.

As discussed, H.A.W. is not Ms. Cowan's "qualifying child," and so it follows that Ms. Cowan cannot be a head of household on the basis of H.A.W.'s being such a child. Additionally, since H.A.W. did not live in Ms. Cowan's household for the entire year, she cannot be a qualifying relative. On the other hand, respondent has conceded that Marquis is Ms. Cowan's qualifying relative. However, section 2(b)(3)(B) expressly precludes taxpayers from claiming head of household filing status when their dependents are not related by blood or marriage. See also sec. 152(d)(2). If Ms. Cowan had adopted Marquis--and she admittedly had not--she would have been entitled to file as a head of household. Marquis qualifies as a dependent only because he has the same principal place of abode as her and is a member of her household; that is, Ms. Cowan would not be a head of household "but for * * * subparagraph (H) of section 152(d)(2)". Consequently,

**[\*15]** Ms. Cowan is not entitled to head of household filing status for the taxable year 2011.

## Conclusion

Therefore, we hold in favor of the Commissioner with regard to the tax deficiency and the disallowance of the dependency exemption deduction for H.A.W., the EITC, the additional CTC, and head of household filing status. However, since the Commissioner has conceded that Ms. Cowan is entitled to a dependency exemption deduction for Marquis as her qualifying relative, her liability must be recomputed. To enable the parties to make that recomputation,

Decision will be entered under

Rule 155.